RECEIVED
MAR 3 0 2006
ROBERT ~
WE~

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| CHAD C. MAYER | CIVIL ACTION NO. 05-0635 |
| VS. | JUDGE MELANÇON |
| COMMISSIONER OF SOCIAL SECURITY | MAGISTRATE JUDGE METHVIN |

## REPORT AND RECOMMENDATION

Before the court is an appeal of the Commissioner's unfavorable disability finding. Considering the administrative record, the briefs of the parties and the applicable law, it is recommended that the Commissioner's decision be **AFFIRMED**.

### *Background*

Born on March 11, 1982, ("Mayer") is a 24-year-old claimant with a GED education. (Tr. 16). Mayer has worked in the past as a welder and laborer. (Tr. 16).

On November 12, 2003, Mayer filed an application for disability insurance benefits and supplemental security income benefits, alleging disability as of October 29, 2003 due to a back injury and left foot drop. His application was denied initially and on reconsideration, and an administrative hearing was held on November 17, 2004. In an opinion dated December 20, 2004, the ALJ found that Mayer retains the residual functional capacity to perform sedentary work. (Tr. 20). The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner from which Mayer now appeals.

## *Assignment of Errors*

Mayer raises three errors on appeal: (1) The ALJ erred in failing to find that Mayer is disabled; (2) the ALJ erred in failing to find that Mayer is entitled to a closed period of disability; and (3) the ALJ erred in finding that Mayer's complaints of pain were not credible.

## *Standard of Review*

The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards. Carey v. Apfel, 230 F.3d 131, 136 (5th Cir. 2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991). The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. Carey, 230 F.3d at 136; Johnson v. Bowen, 864 F.2d 340, 343 (5th Cir.1988). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson, 864 F.2d at 343.

## *Analysis*

In determining whether a claimant is capable of performing substantial gainful activity, the Secretary uses a five-step sequential procedure set forth in 20 C.F.R. §404.1520(b)-(f) (1992):

1. If a person is engaged in substantial gainful activity, he will not be found disabled regardless of the medical findings.

2. A person who does not have a "severe impairment" will not be found to be disabled.

3. A person who meets the criteria in the list of impairments in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

4. If a person can still perform his past work, he is not disabled.

5. If a person's impairment prevents him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

In the instant case, the ALJ determined at Step 5 that, although Mayer suffers from the severe impairments of an old compression fracture, left foot drop, and minimal posterior central disc herniation at L5-S1, he retains the residual functional capacity for the full range of sedentary work and is, therefore, not disabled. (Tr. 19). In so concluding, the ALJ found that Mayer's complaints of pain are not totally credible. (Tr. 20).

After careful consideration of the record, the undersigned concludes that the ALJ's decision is supported by substantial evidence.

1. **Medical History**

The record shows that Mayer was in an automobile accident in 1997 in which he suffered a compression fracture at T 11-12. Mayer underwent surgery in which Harrington rods were placed in his back. Mayer recovered from the surgery, but was left with a complete left foot drop, atrophy of the left thigh and lower leg, and degenerative disc disease. (Tr. 92-92). Mayer contends that he has persistent and disabling back pain from the accident.

The only treatment of record in this case are two emergency room reports from 2003. On October 31, 2003, Mayer went to the emergency room complaining of a possible broken right big

toe. Mayer explained that he had been playing football five days earlier and someone had fallen on his foot. (Tr. 116-17). X-rays of the toe showed no fractures or intraosseous lesions. (Tr. 115). Although Mayer reported a history of back surgery, he did not report any back, knee, neck, or hip pain. (Id.). Mayer did not seek treatment for his back until December 31, 2003, when he presented to the University Medical Center emergency room complaining of back pain. Clinical notes from that visit state that Mayer indicated he was "applying for disability benefits and his lawyer sent him to UMC." (Tr. 111).

At the request of Disability Determinations Services, Mayer was examined by Dr. Harold A. Heitkamp, a general surgeon, on December 12, 2003. Dr. Heitkamp noted that Mayer was not currently under the care of a physician or taking any mediation for his pain. Dr. Heitkamp reported that examination of Mayer's head and neck showed no spasm, no tenderness, and full range of motion, with good shoulder strength, no atrophy of the upper extremities, normal wrists, and good hand strength, grasping ability, and dexterity. Mayer had normal sensation to pin prick. (Tr. 91). Dr. Heitkamp also reported that examination of Mayer's lumbar sacral spine shows that he can squat, get up on his toes and take a step, but that he cannot get back on his heels because of his left foot drop. Mayer was tender at the spinous process of L1, L2, and L3. There was no spasm of the lumbar spine, and range of motion of the lumbar sacral spine was forward flexion 80 degrees (normal 90), extension 20 degrees (normal 30), lateral flexion left 20 degrees, and lateral flexion right 10 degrees (normal 30). Straight leg raising tests were negative, and Mayer had full range of motion in his hips with no pathology. Mayer had no effusion in his knees, no ligamentous weakness, and was generally within normal limits. In the supine position, straight

leg raising tests were negative. Mayer had decreased sensation to pin prick over the left lower extremity from groin to toes. (Tr. 91).

Dr. Heitkamp further reported that x-rays of Mayer's lumbar sacral spine showed "very minimal" compression in the superior aspect of T11 and T12, with a marked degenerative disc at T 11-12 and T12-L1. Dr. Heitkamp reported that the old compression fracture at T11-12 showed "excellent results" from insertion of strut rods with bone grafting, but that Mayer does have some involvement of the spinal cord, as he has complete foot drop on the left and some atrophy of the thigh and lower leg. (Tr. 92).

Dr. Heitkamp opined the following:

> I feel [Mayer] should do no manual labor, no climbing because of his foot drop, no lifting over 30 to 35 lbs. occasionally, 10 lbs. repetitively. No prolonged walking, repetitive bending. His limitations is mainly from his foot drop and weakness in the left leg. The upper extremities are completely within normal limits. *He could do many things in the seated position. He is only 21 and he says he has an interest in becoming a draftsman. He would be a good candidate for retraining.* I feel a foot drop brace is essential to this patient.

(Tr. 92) (emphasis added).

X-rays of Mayer's lumbar spine taken in June 2004 showed an anterior compression fracture of the T11 vertebral body with normal alignment and narrowing of the T11-012 disc space. (Tr. 106). An MRI of the lumbar spine taken on the same date showed minimal posterior central disc herniation at L5-S1 with no evidence of spinal stenosis. (Tr. 107).

On November 19, 2004, after Mayer's administrative hearing, Mayer's attorney retained the services of Shirley D. Dickie, a rehabilitation specialist, who conducted a vocational assessment of Mayer. (Tr. 126-30). Ms. Dickie conducted several tests, including dexterity tests and non-medical, whole-body range of motion tests. Ms. Dickie reported that Mayer scored at

the less-than-one-percentile level for one-hand fine motor coordination and at the less-than-one-percentile level for eye-hand fine motor manual dexterity, which would result in difficulty performing any type of repetitive handling, fingering or manipulating tasks that lasted more than ten minutes. (Tr. 128). Ms. Dickie also reported that Mayer's range of motion is significantly compromised and that he could only complete two of the four tests in this arena. (Tr. 129). Finally, Ms. Dickie opined that "there would not be any jobs in the national economy that I can identify that [Mayer] could perform on a sustained basis." (Tr. 129).

### 2. Assessment of Rehabilitation Specialist and Finding of Non-Disability

Mayer contends that the ALJ erred in failing to find that he is disabled. Specifically, he contends that the ALJ erred in failing to consider the vocational assessment of Shirley Dickie in rendering his decision. In so arguing, Mayer appears to contend that Ms. Dickie is his "treating physician."

It is unclear whether the ALJ considered Ms. Dickie's report when he rendered his decision. The transcript of the administrative hearing states that, after the hearing, the record was reopened to enter a November 26, 2004 letter from Mayer's counsel. (Tr. 145). In the record, a copy of the vocational assessment immediately follows the November 26, 2004 letter. (Tr. 124-30). However, it is not clear that the report was submitted to the ALJ, and indeed, the ALJ does not mention the report in his decision. It is clear, though, that the Appeals Council received a copy of the report, and that it considered the report in denying Mayer's request for review. (Tr. 8).

Notwithstanding the foregoing, it is unnecessary for the court to determine whether the ALJ actually considered – or should have considered – Ms. Dickie's report when he rendered his

decision, because even if he had, there is substantial evidence in the record supporting his finding that Mayer is not disabled. In so finding, the undersigned concludes that Ms. Dickie's report is not entitled to great weight for several reasons.

First, the undersigned notes that Ms. Dickie's report is not that of a treating physician. Indeed, the record shows that Mayer has no treating physician, at least not one who rendered a report for purposes of this social security appeal. Generally, the opinion of a treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability. Newton v. Apfel, 209 F.3d 448, 455 (5th Cir. 2000), citing Leggett v. Chater, 67 F.3d 558, 566 (5th Cir.1995); Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir.1994), cert. denied, 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995). A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." Newton, 209 F.3d at 452, citing Martinez v. Chater, 64 F.3d 172, 176 (5th Cir.1995); see also 20 C.F.R. §404.1527(d)(2). Given that Ms. Dickie's report is not that of a treating physician, the undersigned concludes that it is not entitled to greater weight than any other report in the record.

Indeed, Ms. Dickie's report is not entitled to much weight at all, given that it was prepared by a rehabilitation specialist and contains opinions about Mayer's ability to work rather than his medical condition. The Regulations state that non-medical opinions that assess whether vocational factors prohibit a person from working are not entitled to great weight, inasmuch as the ultimate decision as to whether a claimant is disabled is reserved to the Commissioner. See

20 C.F.R. § 404.1527.[1] Jurisprudence interpreting this regulation confirms the principle that medical, rather than vocational, findings are entitled to weight by the ALJ. In <u>Loya v. Heckler</u>, 707 F.2d 211, 214 (5th Cir. 1983), the court held that the ALJ was required to give substantial weight to the doctors' *medical findings*, not to their opinions about the actual availability of jobs for a person of limited physical ability and education. <u>See also</u> 20 C.F.R. §404.1527 (1982). Thus, the <u>Loya</u> court held that opinions from medical professionals based upon vocational considerations are not authoritative. 707 F.2d at 214. See also <u>Barraza v. Barnhart</u>, 2003 WL 1098841, *1 (5th Cir. 2003) ("To the extent that Plaintiff's VA benefit payment rate was based upon vocational, rather than medical, factors, it was a non-medical opinion which is not entitled to the deference due a medical determination of disability.").

---

[1] 20 C.F.R. § 404.1527 states:

> (e) Medical source opinions on issues reserved to the Commissioner. Opinions on some issues, such as the examples that follow, are not medical opinions, as described in paragraph (a)(2) of this section, but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability.
> (1) Opinions that you are disabled. We are responsible for making the determination or decision about whether you meet the statutory definition of disability. In so doing, we review all of the medical findings and other evidence that support a medical source's statement that you are disabled. *A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled.*
> (2) Other opinions on issues reserved to the Commissioner. We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). *Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to this subpart, your residual functional capacity (see §§ 404.1545 and 404.1546), or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner.*

(emphasis added).

Furthermore, to the extent that Ms Dickie's opinions conflict with those of an examining medical doctor, they are even further compromised. Where there are conflicting opinions among medical physicians, the ALJ has the sole responsibility for weighing the evidence and choosing which opinion to accord greater weight. McCuller v. Barnhart, 72 Fed.Appx. 155, 157, 2003 WL 21954208, *1 (5th Cir. 2003), citing Muse v. Sullivan, 925 F.2d 785, 790 (5th Cir.1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record."); see also Pierre v. Sullivan, 884 F.2d 799, 803 (5th Cir.1989). Here, Ms. Dickie reported that Mayer scored at the less than one-percentile level for one-hand fine motor coordination and at less than one-percentile for eye-hand fine motor manual dexterity, and that he had numbness in the thumb pad and pain in his right shoulder and wrist. (Tr. 128-29). Ms. Dickie report that these findings would result in difficulty performing any type of repetitive handling, fingering or manipulating tasks that lasted more than ten minutes. (Tr. 128). On the other hand, Dr. Heitkamp reported that Mayer's *upper extremities are completely within normal limits, he has good shoulder strength, no atrophy of the upper extremities, normal wrists, good hand strength, grasping ability and dexterity, and normal sensation to pin prick.* (Tr. 91). Furthermore, while Ms. Dickie reported that Mayer has a compromised range of motion and could not even complete two of the four tests in this area, Dr. Heitkamp reported that Mayer has full range of motion in his head and neck as well as his hips, with no pathology. (Tr. 91). Finally, and most importantly, while Ms. Dickie opined that there would not be any jobs in the national economy that Mayer can perform on a sustained basis, (Tr. 129), Dr. Heitkamp reported that Mayer "could do many [jobs] in the seated position." (Tr. 91). Specifically, Dr. Heitkamp noted that Mayer has an interest in becoming a draftsman, a

profession based on technical drawing, and would be a good candidate for retraining in this area. The undersigned notes that such a profession would require Mayer to use his hands and fingers to draw on a daily basis, tasks that Dr. Heitkamp clearly felt Mayer is capable of.

Finally, the undersigned concludes that the Dr. Heitkamp's residual functional capacity assessment – upon which the ALJ relied in reaching his non-disability finding – is consistent with the definition of "sedentary work" in the Regulations:

> **Sedentary work.** Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §404.1567. Given that Dr. Heitkamp reported that [Mayer] can lift 30 to 35 lbs. occasionally and 10 lbs. repetitively, with no prolonged walking or repetitive bending, the undersigned concludes that the ALJ's conclusion that Mayer can do sedentary work is consistent with Dr. Heitkamp's RFC assessment.

Considering the foregoing, the undersigned concludes that substantial evidence supports the ALJ's finding of non-disability and his decision not to award a closed period of disability.

### 3. **Complaints of Pain and Credibility**

Mayer also contends that the ALJ erroneously determined that he was only partially credible regarding his complaints of pain.

The law of the Fifth Circuit is that pain reaches the level of a disabling complaint when such pain is constant, unremitting, and wholly unresponsive to therapeutic treatment. Francois v.

Commissioner of Social Sec., 2001 WL 322194, *11 (E.D. La. 2001), citing Falco v. Shalala, 27 F.3d 160, 163 (5th Cir. 1994). As to a determination of whether a claimant's pain is disabling, the first consideration is whether the objective medical evidence shows the existence of an impairment which could reasonably be expected to produce the pain alleged. Francois, 2001 WL 322194, at *11. Generally, medical factors that indicate disabling pain include limitation of range of motion, muscle atrophy, strength deficits, sensory deficits, reflex deficits, weight loss or impairment of general nutrition, noticeable swelling, and muscle spasm. Id. Other "medical signs" that support a finding that a claimant is disabled include a physician's diagnosis based upon history, symptoms and response to medication.

When there are conflicts between subjective complaints of pain and objective evidence, the ALJ is to evaluate the claimant's credibility. Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir. 1991). "How much pain is disabling is a question for the ALJ since the ALJ has primary responsibility for resolving conflicts in the evidence." Carrier, 944 F.2d at 246. This court may not reweigh the evidence. Id., citing Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir.1990).

After review of the record, the undersigned concludes that substantial evidence supports the ALJ's finding. The record shows that Mayer has not sought regular medical treatment for his condition, despite being eligible for free medical care at University Medical Center and having availed himself of its services on occasion. Such failure to seek treatment belies complaints of disabling pain. Furthermore, the record shows that Mayer's lifestyle is not consistent with that of one who is experiencing constant and wholly unremitting pain. For example, although Mayer testified that he has to constantly lay down because of pain, (Tr. 140), the record shows that he

went to the UMC emergency room on October 31, 2003, complaining that he may have broken his leg during a football game with friends. (Tr. 116-17).

Finally, the record also shows that Mayer does not take prescription medication for his pain. Mayer has given different reasons for this. Mayer explained to Ms. Dickie that, although he took prescription medication for years, he no longer takes them because he is concerned about becoming addicted. (Tr. 19). However, at his administrative hearing, Mayer testified that he does not take prescription medication because he cannot afford it. (Tr. 140). When asked whether his parents, with whom he lives, might purchase medication for him (both are employed), Mayer testified that it's a "pride thing" that keeps him from asking for medication. (Id.). Despite testifying that he cannot afford medication, the record shows that Mayer smokes 1 ½ packs of cigarettes per day. (Tr. 112). The Fifth Circuit has held that for a claimant who cannot afford prescribed treatment or medicine, *and can find no way to obtain it*, "the condition that is disabling in fact continues to be disabling in law." Lovelace v. Bowen, 813 F.2d 55, 59 (5th Cir. 1987). See also Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir.1999) (claimant's statement that he could not afford medications was contradicted by lack of evidence that he "sought any treatment offered to indigents or chose to forego smoking three packs of cigarettes a day to help finance pain medication"); Schneiders v. Barnhart, 2006 WL 559247, *13 (N.D.Iowa 2006) (where claimant went for long period of time without seeking treatment at all, refused some recommended treatment, failed to take his medications as prescribed, court found support for ALJ's determination that claimant's subjective complaints were not fully credible); Jacobs v. Chater, 956 F.Supp. 1560, 1567-68 (D.Colo.1997) (inability to pay for treatment does not

necessarily preclude an ALJ from considering the failure to seek medical attention in credibility determinations, especially where the claimant could apparently afford beer and cigarettes).

Here, the undersigned concludes that Mayer fails to show that he can find no way to obtain medication that would alleviate his pain. In so finding, the undersigned concludes that, if Mayer can afford his cigarette habit, he can afford medication.

Considering the foregoing, the undersigned concludes that the ALJ did not err in concluding that Mayer's complaints of pain are less than credible.

### *Conclusion*

Considering the foregoing, it is recommended that the ALJ's decision be **AFFIRMED.**

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have ten (10) days from receipt of this Report and Recommendation to file specific, written objections with the Clerk of Court. Counsel are directed to furnish a courtesy copy of any objections or responses to the district judge at the time of filing.

Any judgment entered herewith will be a "final judgment" for purposes of the Equal Access to Justice Act (EAJA). See Richard v. Sullivan, 955 F.2d 354 (5th Cir. 1992) and Shalala v. Schaefer, 509 U.S. 292 (1993).

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal**

conclusions accepted by the District Court, except upon grounds of plain error. See **Douglass v. United Services Automobile Association**, 79 F.3d 1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana on March 30, 2006.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)

COPY SENT
DATE 3-30-06
BY CM
TO MEM
TLM/PJ